**Jimmie Lee WATSON, et al., Plaintiffs,**

v.

**James H. McGEE, et al., Defendants.**

**No. C–3–80–354.**

United States District Court,
S. D. Ohio, W. D.

Dec. 1, 1981.

Philip B. Herron, Richard M. Hunt, John S. Pickrel, Dayton, Ohio, for plaintiffs.

James D. Dennis, Asst. City Atty., Dayton, Ohio, for defendants.

## DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION TO DISMISS COMPLAINT; PLAINTIFFS GIVEN LEAVE OF COURT TO AMEND COMPLAINT WITHIN STATED PERIOD OF TIME, CONFERENCE CALL SET

RICE, District Judge.

### I. INTRODUCTION

This matter is before the Court pursuant to the motion of all Defendants herein to dismiss the complaint, under Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. Defendants have filed both a memorandum and reply memorandum in support of their motion, alleging various grounds of dismissal with respect to each Defendant or group of Defendants. Plaintiffs have responded to the contentions raised by the Defendants, and have requested that the motion to dismiss be denied with regard to all Defendants. Before the specific matters at issue herein are addressed, the Court will briefly outline the relevant background of this action, while being cognizant that under the standards applicable to motions to dismiss, the allegations of the complaint are taken as true. *United States v. New Wrinkle, Inc.,* 342 U.S. 371, 373, 72 S.Ct. 350, 351, 96 L.Ed. 417 (1952).

Plaintiffs filed the within action on August 28, 1980, against the City of Dayton and other named Defendants, including the Dayton City Mayor, members of the Dayton City Commission, the Dayton City Manager, Dayton City Police Chief, and unnamed police officers at the Dayton City Jail. Plaintiffs sought to represent a class of persons consisting of individuals confined as pretrial detainees at the Dayton City Jail on or about April 2, 1979. This action arises from a fire at the Dayton City Jail on the above date, which caused smoke inhalation, lung damage, and other physical injuries to the Plaintiffs and other pretrial detainees.

Plaintiffs have alleged in the complaint that their injuries were caused by the Defendants' negligent actions, including their failure to remedy the hazardous and unsafe conditions at the Dayton City Jail, which

were known by Defendants to be inadequate in relation to fire safety standards prior to the time of the fire. Plaintiffs have contended that the acts and omissions of the Defendants violated Plaintiffs' rights to life and liberty and equal protection under the Fourteenth Amendment, and their right under the Eighth Amendment, not to be subjected to cruel and unusual punishment. Jurisdiction herein is premised upon 28 U.S.C. §§ 1331, 1342, and 1343, by virtue of the fact that the Plaintiffs' claims are brought under 42 U.S.C. §§ 1983, 1985, 1986 and 1988. With this information in mind, the Court now turns to consideration of the specific grounds for dismissal raised by the Defendants. However, for analytical purposes, the contentions made by Defendants will be addressed in a different order than that initially advanced in Defendants' motion to dismiss, with attention first being directed to the issue of whether the complaint has stated a cause of action under federal law with regard to any of the Defendants.

## II. FAILURE TO STATE A CAUSE OF ACTION AGAINST ANY OF THE DEFENDANTS

In Part IV of the Memorandum in support of Defendants' Motion to Dismiss, the Defendants have claimed that this action must be dismissed because the complaint herein is based solely upon the negligent conduct of the Defendants, which is not sufficient to state a cause of action under 42 U.S.C. § 1983. Plaintiffs have not responded specifically to the negligence argument raised by Defendants, but have pointed out that the complaint alleges both actions taken under color of state law, and a violation of Plaintiffs' Fifth, Eighth, and Fourteenth Amendment rights. These allegations are claimed by Plaintiffs to be sufficient to satisfy the requirements of § 1983.

42 U.S.C. § 1983, as amended in 1979, states that:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Until recently, the Supreme Court has refrained from determining whether allegations of negligence are sufficient to state a cause of action under § 1983. *Procunier v. Navarette*, 434 U.S. 555, 566, n.14, 98 S.Ct. 855, 862, n.14, 55 L.Ed.2d 24 (1978) (*Navarette*); *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (*Baker*). In *Baker*, the Court stated that:

Having been around this track once before in *Procunier, supra*, we have come to the conclusion that the question whether an allegation of simple negligence is sufficient to state a cause of action under § 1983 is more elusive than it appears at first blush. It may well not be susceptible of a uniform answer across the entire spectrum of conceivable constitutional violations which might be the subject of a § 1983 action. In any event, before the relationship between the defendant's state of mind and his liability under § 1983 can be meaningfully explored, it is necessary to isolate the precise constitutional violation with which he is charged.

*Id.* at 139–40, 99 S.Ct. at

However, in a recent decision, *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (*Parratt*), the Supreme Court attempted to provide more assistance to lower courts, noting, with respect to *Baker* and *Navarette*, that:

These two decisions, however, have not aided the various courts of appeals and district courts in their struggle to determine the correct manner in which to analyze claims such as the present one which allege facts that are commonly thought to state a claim for a common-law tort normally dealt with by state courts, but instead are couched in terms of a constitutional deprivation and relief is sought under § 1983.

*Id.* 101 S.Ct. at 1911. In *Parratt*, the Plaintiff, a prison inmate, brought suit under § 1983 to recover for the negligent loss of hobby materials valued at approximately $23.50; claiming that he had been deprived of his property without due process of law. *Id.* at 1910. The District Court granted summary judgment in the inmate's favor, and the Court of Appeals affirmed. *Id.* The Supreme Court reversed the judgment, finding that the prisoner had not satisfied the requirements necessary to establish a Fourteenth Amendment violation because the deprivation of his property had not been accomplished without due process of law. *Id.* at 1917. Specifically, the Court noted that although the inmate had been deprived of his property, the fact that the State of Nebraska "had a tort claims procedure which provided a remedy to persons who suffered tortious losses at the hands of the State," *id.* at 1910, avoided the conclusion that there had been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment. *Id.* at 1916.

In the course of reaching the above conclusions, the Court considered whether negligent acts were sufficient to invoke the application of § 1983. The Court stated that:

> Nothing in the language of § 1983 or its legislative history limits the statute solely to intentional deprivation of constitutional rights. In *Baker v. Collan, supra,* we suggested that simply because a wrong was negligently as opposed to intentionally committed did not foreclose the possibility that such action could be brought under § 1983.

. . . . .

Section 1983, unlike its criminal counterpart, 18 U.S.C. § 242, has *never been found by this Court to contain a state of mind requirement.* The Court recognized as much in *Monroe v. Pape,* 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961), when we explained after extensively reviewing the legislative history of § 1983, that:

> "It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies."

. . . . .

Both *Baker v. McCollan* and *Monroe v. Pape* suggest that § 1983 affords a "civil remedy" for deprivations of federally protected rights caused by persons acting under color of state law *without any express requirement of a particular state of mind. Accordingly, in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.* *Id.* at 1912–1913 (emphasis added).

■ Based on the comments made by the Supreme Court in *Parratt*, this Court concludes that negligence is cognizable under § 1983, subject to the limitation that the wrongful conduct alleged must be performed under color of state law, and must deprive the plaintiff of a right secured by the Constitution and the laws of the United States. Thus, even if Plaintiffs' complaint herein is premised solely upon the negligent acts of the Defendants, that fact alone does not mandate dismissal of the Complaint.

Because distinct arguments have been presented by various Defendants with respect to the "under color of state law" requirement of § 1983, the Court has determined that for analytical purposes, it would be appropriate to first isolate and consider the Constitutional right of the Plaintiffs which is alleged to have been infringed by the actions or omissions of the Defendants. After the precise rights at issue herein have been ascertained, the Court will then address separately the "under color of law"

requirement with regard to each Defendant or group of Defendants. In the complaint, Plaintiffs have alleged violations of their Fourteenth Amendment right not to be deprived of liberty or life without due process of law, their right to equal protection of the laws, and their right under the Eighth Amendment, not to be subjected to cruel and unusual punishment. Much of the discussion of these matters by the parties herein has been rendered inapposite by the Supreme Court's ruling in *Parratt*, which was issued subsequent to the submission herein of the memoranda directed to the Defendant's Motion to Dismiss. Therefore, rather than discussing specific points raised by both Plaintiffs and Defendants, the Court will instead consider, as directed by *Parratt*, whether the allegations of the complaint, taken as true, establish a violation of any right guaranteed to Plaintiffs by the Constitution.

Because Plaintiffs were pretrial detainees at the time of the fire rather than convicted prisoners, their constitutional rights must be evaluated in a slightly different manner than those of sentenced inmates. In the case of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1978) (*Wolfish*), the Supreme Court considered the constitutional rights of pretrial detainees, or persons who had been charged with a crime, but who had not yet been tried on that charge. *Id.* at 523, 99 S.Ct. at 1865, 1866. The detainees in *Wolfish* had initiated suit in District Court, challenging various conditions and restrictions of their confinement at the New York Metropolitan Correctional Center, a short-term correctional facility built primarily to house pretrial detainees. *Id.* The district court enjoined approximately twenty practices of the institution, on constitutional and statutory grounds, *id.* and the Court of Appeals largely affirmed, finding that the detainees might be subjected only to privations and restrictions which

"'inhere in their confinement itself or which are justified by compelling necessities of jail administration.'" *Id.* at 523–524, 99 S.Ct. at 1865–1866 (citations omitted). The Supreme Court, however, rejected the "compelling necessity" test used by the Court of Appeals. *Id.* at 534, 99 S.Ct. at 1871.

The Court noted that in formulating the "compelling necessity" test, the Court of Appeals had relied on the presumption of innocence, *id.* at 532, 99 S.Ct. at 1870, as well as the "indisputable rudiments of due process." *Id.* at 533, 99 S.Ct. at 1871. The Court rejected the first basis entirely by finding that it did not apply to a determination of rights during a detainee's confinement prior to trial. *Id.* With respect to the second justification for the test, the Supreme Court said:

> We do not doubt that the Due Process Clause protects a detainee from certain conditions and restrictions of pretrial detainment. . . . Nonetheless, the Clause provides no basis for application of a compelling-necessity standard to conditions of pretrial confinement that are not alleged to infringe any other, more specific guarantee of the Constitution.

*Id.* The Court therefore concluded that:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law.

*Id.* at 535 [1], 99 S.Ct. at 1872.

■ This Court has determined, for the reasons which follow, that the case at hand, like *Wolfish*, presents only claims based on

---

1. By the above quoted statements in *Wolfish*, the Supreme Court did not mean that pretrial detainees would be precluded from asserting claims on any other basis but the due process clause as it related to deprivations of liberty. Rather, the Court was merely articulating the appropriate standard to be applied where the condition involved did not infringe upon a more specific constitutional right. In fact, the Court's comments as cited in the text above, indicate that in actions wherein other, more precise violations are alleged, a "compelling necessity" test may well be required.

the constitutional guarantee .against infringement of liberty without due process of law.[2] Although Plaintiffs have alleged violations both of equal protection, and of the Eighth Amendment prohibition against cruel and unusual punishment, the Court has *presently* been unable to find any basis in the complaint to support either of these constitutional claims. In the first place, the Supreme Court in *Wolfish* indicated that the Eighth Amendment was not applicable to the claims of pretrial detainees because the " 'State does not acquire the power to punish with which the Eighth Amendment is concerned until *after* it has secured a formal adjudication of guilt in accordance with due process of law.' " *Id.* at 535, n.16, 99 S.Ct. at 1872, n.16, quoting from *Ingraham v. Wright*, 430 U.S. 651, 671–672, n.40 (1977). Therefore, the claims of the pretrial detainees herein cannot be based on the Eighth Amendment prohibition against cruel and unusual punishment. Secondly, although Plaintiffs have averred generally in the complaint that their equal protection rights have been violated, and have argued in their Memorandum in Opposition to Dismiss, that the City did not comply with public safety laws on an equal basis, there are presently no allegations in the complaint to that effect. Thus, while such claims may be viable, the Court cannot at this time find that the allegations of the complaint, taken as true, furnish a basis for concluding that Plaintiffs have suffered a deprivation of their right to equal protection under the Fourteenth Amendment. The Court will, however, permit Plaintiffs to file an amended complaint within fourteen days of the receipt of this entry, should Plaintiffs determine that grounds for assertion of such a constitutional violation exist.

Having concluded then, that the Due Process protections discussed in *Wolfish* apply to the claims in the present case, the question remains whether the allegations of the complaint, if true, would establish a deprivation of the Plaintiffs' Fourteenth Amendment right not to be deprived of their liberty without due process of law. More specifically, did the allegedly unsafe conditions of confinement at the Dayton City Jail amount to "punishment" of the Plaintiffs and other pretrial detainees who were confined therein on April 2, 1979.

Assuming *arguendo* that the allegations in the complaint only charge Defendants with negligence, the argument may be made that without an intent to punish, the acts or omissions of the Defendants could not be classified as punishment. However, in *Wolfish*, the Supreme Court indicated that an express intent to punish is not required, by setting forth the following standard to be applied in evaluating conditions of confinement:

A court must determine whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.... Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." ... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* 441 U.S. at 538–539, 99 S.Ct. at 1873–1874 (citations omitted).

---

2. Although the present claims are premised upon the Fourteenth Amendment Due Process Clause rather than the Fifth Amendment guarantee involved in *Wolfish*, that fact is not material, since the Court indicated in *Wolfish* that the pertinent constitutional protection would be the Fourteenth Amendment where the State sought to impose punishment prior to adjudication. *Id.* 441 U.S. at 535, n.16, 99 S.Ct. at 1872, n.16 (citation omitted).

■ Applying this standard to the allegations of the complaint, it is apparent that although there may not have been an express intent on the part of the City of Dayton, or its officials, to punish the Plaintiffs, there nevertheless appears to have been scant justification or purpose, for the existence of conditions which endangered the lives of persons who were powerless either to alter those conditions, or to escape their effects. Therefore, the Court concludes that the allegations of the complaint, if taken as true, state a claim for deprivation of Plaintiffs' rights under the Fourteenth Amendment.

As was previously indicated, § 1983 requires not only a deprivation of a constitutionally protected right, but also that a defendant's actions were taken under color of state law. All Defendants herein, with the exception of the police officers named as John Doe Defendants, have maintained that the complaint must be dismissed because there are no allegations therein that the Defendants were acting under color of state law.[3] In assessing the validity of the Defendants' contentions, the Court will first address the "under color of law" requirement as it relates to the City of Dayton, together with any other matters raised in the Motion to Dismiss which may be pertinent to the continuation of the within action against that Defendant. Following that analysis, the Court will next discuss the remaining issues as they relate to the other Defendants herein.

## III. DISMISSAL OF THE CLAIMS AGAINST THE CITY OF DAYTON

In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), overruled in part on other grounds, in *Monell v. Department of Social Services of New York City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (*Monroe*), the Supreme Court considered the meaning of "under color of" in § 1983, and adopted the following definition: " '[m]isuse of power, possessed by vir-

tue of state law and made possible only because the wrongdoer is clothed with the authority of State law, is action taken "under color of" state law.' " *Id.* 365 U.S. at 184, 81 S.Ct. at 482, quoting from *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). This interpretation of § 1983 is still being applied by the Supreme Court. *See: Owen v. City of Independence, Missouri*, 445 U.S. 622, 650, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980).

■ In the present case, the City of Dayton was unquestionably clothed with authority under state law to operate the City Jail. Ohio Rev.Code Ann. § 715.16 (Page) provides that:

Any municipal corporation may:

(A) Establish, erect, maintain and regulate jails, morgues, workhouses, stationhouses, prisons and farm schools.

Therefore, it is axiomatic that if the City misused the above power granted to it by state law, its actions were performed under color of state law for the purposes of § 1983.

■ Defendants have contended that the failure of Plaintiffs to include allegations that each Defendant acted under color of law requires the dismissal of the complaint. It is true that in *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), the Court stated that:

By the plain terms of § 1983, two and only two allegations are required to order to state a cause of action under that statute. First, the Plaintiff must allege that some person deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

*Id.* 100 S.Ct. at 1923. However, the authority cited by the Court for the above statement was *Monroe*, 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961), overruled in part on other grounds, in *Monell v. Department of Social Services of New York*

---

3. Because the John Doe Defendants, guards at the City Jail, have asserted no claim that they were not acting under color of law for purposes

of § 1983, the Motion to Dismiss is denied with respect to the John Doe Defendants at this time, without further discussion.

*City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). At page 171 of the *Monroe* decision, the Court, in discussing R.S.1979, 42 U.S.C. § 1983, noted that satisfaction of that Statute's requirements could be obtained by "*[a]llegation of facts constituting a deprivation under color of state authority of a right guaranteed by the Fourteenth Amendment.*" *Id.* (emphasis added). Because there are allegations in the complaint that the City, a municipality chartered in Ohio, established and operated the City Jail, that the Jail was negligently constructed, equipped and maintained, and that the Defendant in general acted under color of law, the Court believes Plaintiffs have sufficiently complied with *Gomez* and *Monroe*. However, should Plaintiffs wish to amend their complaint to make more particularized allegations with regard to the City's actions under "color of law," they are given fourteen days from receipt of this decision to file such an amendment to the complaint.

The City of Dayton has also contended that the complaint must be dismissed because it does not allege that the City maintained an official policy, custom, or course of conduct which resulted in a deprivation of the Plaintiffs' constitutional rights. In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (*Monell*), the Supreme Court stated that:

> Local government bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received

formal approval through the body's official decision making channels.

*Id.* at 690–691, 98 S.Ct. at 2035–2036.

■ In the present case, Plaintiffs, of course, have made no allegations that the City of Dayton officially adopted a policy permitting the City Jail to be constructed or operated as a fire hazard. Indeed, it would be difficult to conceive of a situation wherein any municipality would "officially" adopt such a policy. There are allegations in the complaint that the Jail, which was operated by the City, was constructed and maintained in an unsafe manner. The complaint further indicates that the Jail was known to be hazardous prior to the date of the fire, and that Defendants had personal knowledge of a State Fire Marshal's report made before the fire, but failed to take action to remedy the dangerous conditions at the Jail. Given these allegations, which suggest the existence of a custom or policy of hazardous maintenance of the Jail, and assuming *arguendo* that something more than the action under color of law previously discussed is required, the Court concludes that sufficient allegations of custom have been made herein to satisfy the requirements of *Monell*.

Based on the preceding analysis, which indicates that the City of Dayton was acting under color of law, and the conclusions previously articulated with regard to the constitutional deprivation suffered by Plaintiffs, the Court finds that the allegations of the complaint, taken as true, state a cause of action against the Defendant, the City of Dayton.

■ The City has raised an additional argument for dismissal, by contending that the complaint fails to state a claim because it is based upon the negligent acts or omissions of City employees or officials rather than upon an official City policy. Defendant therefore has argued that its alleged liability is premised upon a respondeat superior, or vicarious liability theory, which is forbidden by the *Monell* decision. Plaintiffs have responded to these contentions by pointing out that various City policies are involved herein, including the policy of the

City not to safely equip or staff the Jail, and the policy of the City not to train the Jail guards in fire procedure. The Court has already indicated its belief that sufficient evidence of a City custom or policy has been alleged. However, the Court will briefly consider the respondeat superior ruling in *Monell*, and explain why that ruling is not pertinent herein.

In *Monell*, the Supreme Court indicated that liability could not be imposed upon a city solely on the basis of "the existence of an employer-employee relationship with a tortfeasor." *Id.* at 692, 98 S.Ct. at 2036. The Court further stated that "[i]nstead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government or entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037–2038. In *Nock v. City of Dayton*, No. 78–222 (S.D.Ohio, October 24, 1980) (*Nock*), this Court concluded that the above language in *Monell* required a *nexus* between the actions which gave rise to the claims of the plaintiff, and an official custom or policy of the City defendant. *Id.* at 9 (emphasis added). Unlike *Nock*, however, the within matter is before the Court upon a motion to dismiss rather than upon a motion for summary judgment. Based on the present inadequate factual development, the Court is unable to conclude that the City of Dayton played no active role in the constitutional violations alleged in the complaint. More importantly, however, the Court finds a fundamental distinction between the situation presented in *Nock* and that herein, even on the limited facts presented by the allegations in the complaint. In *Nock*, the plaintiff was shot by Dayton Police Department officers during an incident at the plaintiff's home. *Id.* at 1–2. The only allegations made concerning the City's liability were that the City maintained the police department and employed the officers who had been named in *Nock* as defendants. Based on these allegations, which appeared to invoke liability purely on a respondeat superior basis, as well as the plaintiff's failure to present arguments in-

dicating that the City was being sued as an "active" defendant, this Court dismissed the City as a defendant. *Id.* at 8–11.

If the present case had been brought only upon the basis of the City's liability for employing the police officers who failed to release the pretrial detainees from their cells on the day of the Jail fire, the Court might well conclude that as in *Nock*, the claims against the City must be dismissed. However, Plaintiffs have also claimed that the City Jail was negligently constructed, equipped, and staffed, in the face of dangers known to City officials. Without engaging in undue speculation about the facts of this case, the Court would hazard the suggestion that the responsibility for remedying unsafe conditions is within the scope of duties a municipality assumes when it determines to operate a jail. Moreover, the Court does not believe that *Monell* was intended by the Supreme Court to be a shield for a municipality's *own* wrongful conduct. Therefore, after having construed the allegations of the complaint as true, the Court finds that the "touchstone" or "nexus" lacking in *Nock* is present herein, and thus concludes that the claims against the City of Dayton are not subject to dismissal under *Monell*.

█ One other matter remains for consideration with regard to the dismissal of the claims against the City—the effect of the City's immunity from suit under Ohio law. The City of Dayton has contended that because it is immune from suit under Ohio law for the performance of the activities in question herein, this action against it cannot be maintained. The Defendant is correct that Ohio law exempts a municipality from suit for the performance of governmental functions such as the operation and maintenance of a jail. *Williams v. City of Columbus*, 33 Ohio St.2d 75, 294 N.E.2d 891 (1973). However, the Supreme Court in *Owen v. City of Independence, Missouri*, 445 U.S. 622 (1980), foreclosed such a State law immunity defense by stating that:

[T]he municipality's "governmental" immunity is obviously abrogated by the sov-

ereign's enactment of a statute making it amenable to suit. Section 1983 was just such a statute. By including municipalities within the class of "persons" subject to liability for violations of the Federal Constitution and laws, Congress—the supreme sovereign on matters of federal law—abolished whatever vestige of the State's sovereign immunity the municipality possessed.

*Id.* at 647–648. Consequently, even if the City of Dayton is immune from liability under Ohio law for the operation of the Dayton City Jail, that fact is simply not pertinent to the present action, which has been initiated under § 1983.

Based on the foregoing analysis, the Court concludes that the complaint does state a cause of action under § 1983 against the City of Dayton, and that Plaintiffs' claims are not foreclosed either by the respondeat superior ruling in *Monell*, or by virtue of the City's immunity from suit under Ohio law. Accordingly, the Motion to Dismiss filed by Defendant, the City of Dayton, must be overruled.

## IV. DISMISSAL OF CLAIMS AGAINST DAYTON CITY OFFICIALS

Defendants McGee, Dixon, Orick, Roach, Zimmer, Sterzer, and O'Conner, who are public officials and employees of the City of Dayton, have moved for dismissal of the Complaint on the ground that it fails to allege that they were acting under color of state law. In addition, these Defendants have requested that the Complaint be dismissed because it contains no allegations that they directly participated in the incident which is the subject of the present litigation. Because such personal involvement is required in order to hold public officials liable, Defendants have contended that the complaint fails to state a claim upon which relief may be granted.

4. Courts in this Circuit have also found the "under color of State law" requirement of § 1983 to be present where the actions involved were those of lesser officials. *See: Jones v. Wittenberg*, 323 F.Supp. 93, 98 (N.D.Ohio), opinion supplemented 330 F.Supp. 707 (N.D. 1971), aff'd *Jones v. Metzger*, 456 F.2d 854 (6th Cir. 1972) (holding in § 1983 action brought

■ Although the Defendant officials are not officers of the State of Ohio, the law is clear that conduct of lesser officials, such as all the official Defendants herein, constitutes state action for the purpose of § 1983 when the authority to act is derived ultimately from state law.[4] In *Monroe*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), overruled in part on other grounds, in *Monell v. Department of Social Services of New York City*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court upheld dismissal of the complaint against the City of Chicago, for reasons later overruled in *Monell*, but reversed the dismissal of the claims against thirteen City police officers. *Id.* 365 U.S. at 169–170, 172, 81 S.Ct. at 474–475, 476. Specifically, the Court found that the complaint, which alleged a warrantless search by the thirteen police officers, stated a cause of action under § 1983, in that both a constitutional deprivation and actions taken under color of state law had been set forth therein. *Id.* at 170–172, 187, 81 S.Ct. at 475–476, 484. The Court noted that Congress intended to give a remedy to those persons deprived of constitutional rights by an official's "abuse of his position," *id.* at 172, 81 S.Ct. at 476, and then adopted the following definition of "under color of law," which has previously been cited herein, to the effect that " '[m]isuse of power, possessed only because the wrongdoer is clothed with the authority of State law, is action taken "under color of" state law.' " *Id.* at 184, 81 S.Ct. at 482 (citation omitted).

■ As previously noted, Ohio Rev.Code Ann. § 715.16 (Page) provides that a municipality may erect, maintain, and regulate jails. Further, Ohio Rev.Code Ann. § 715.-03 (Page) states that the legislative authority of a municipal corporation may provide

against county commissioners, sheriff, and city official, that operation of county jail constituted action under color of law); *Cf.: Hanna v. Drobnick*, 514 F.2d 393, 397 (6th Cir. 1975) (finding city building inspector who conducted warrantless inspections of homes pursuant to city ordinance to be "persons" under § 1983, and subject to suit under that statute).

by ordinance or resolution for the exercise and enforcement of the powers listed in §§ 715.01 to 715.67 of the Ohio Revised Code. Thus, under Ohio law, a municipal legislative authority is clothed with the power to enforce the maintenance of municipal jails. The City Commission, which includes the Mayor of Dayton, is the legislative authority charged with such duties under the Dayton City Charter, which provides that the Commission shall be the governing body of the City of Dayton, with the power to pass ordinances and adopt regulations. *Dayton Ohio Rev.Code of Gen. Ordinances,* Vol. 1, § 3 (1977).

■ The complaint herein alleges in effect that Defendants McGee, Dixon, Orick, Schierloh, Roach, and Zimmer, past or present Dayton City Commission members, misused their legislative authority by failing to remedy known dangerous conditions at the Jail. Because the authority under which the Commission acted, or failed to act, was pursuant to state law, the Court concludes that under the allegations of the Complaint, taken as true, the "under color of state law" requirement of § 1983 has been satisfied insofar as the above Defendants are concerned.

■ Likewise, Defendants Sterzer and O'Conner, the City Manager and Police Chief of Dayton, have been delegated certain powers by the Dayton City Charter. Sterzer, as administrative head of the City, has been given various responsibilities, including the power to exercise control over all departments created in the Charter, the power to recommend necessary measures to the City Commission for adoption, and the power to conduct investigations into the affairs of any department. *Dayton City Rev.Code of Gen. Ordinances,* Vol. 1, §§ 47, 48, 50 (1977). Thus, insofar as the complaint alleges that Sterzer possessed supervisory power over the jail, but misused that power by failing to take necessary action to remedy unsafe conditions at the Jail, the Court concludes that the complaint sufficiently alleges that Sterzer was acting un-

der color of state law. Finally, Defendant O'Conner, as Chief of Police, was given the power of exclusive control of the stationing of patrolmen and other police officers. *Dayton, Ohio Rev.Code Gen. Ordinances,* Vol. 1, § 70 (1977). Again, the complaint alleges a misuse of this power by stating that the City Jail was inadequately staffed at the time of the fire. Therefore, the Court concludes that the actions of O'Conner, as alleged in the complaint, are sufficient to satisfy the "under color of" state law requirement as defined in *Monroe.*[5] Again, while the Court does not believe that parroting of the phrase "under color of law," is required with respect to each Defendant, the Court will permit Plaintiffs to amend their complaint within fourteen days of receipt of this decision, to make such allegations, for the reasons earlier mentioned in the discussion of the claims against the City of Dayton.

■ The second ground asserted for dismissal of the Defendants-City officials is that the complaint fails to contain any allegations that these Defendants were directly involved in the incident which is at issue herein. Defendants have therefore argued that under *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (*Rizzo*), and *Wilson v. Beebe,* 612 F.2d 275 (6th Cir. 1980) (*Wilson*), the complaint is fatally defective and should be dismissed. By "incident," the Court assumes that Defendants are referring to the Jail fire which occurred on or about April 2, 1979. It is true that the complaint does not allege that any of the Defendant officials were personally present at the Jail on the day of the fire, or that they were directly involved in the failure of the guards to release the Plaintiffs from their cells during the fire. However, the Court believes that Defendants have adopted an unduly restrictive construction of the complaint, which does not confine its allegations of liability to these events which occurred on or about April 2, 1979. Rather, the complaint alleges, as noted above, direct participation by all of the Defendant officials in the acts or omissions preceding the

5. *See:* Footnote 4.

fire. While the complaint might have been more artfully phrased, the Court does not find dismissal on that basis to be appropriate, since the allegations therein do sufficiently allege the participation of all of the Defendant officials in the course of events which culminated in the Jail fire.

In addition, the Court does not consider that the Supreme Court's decision in *Rizzo*, and the Sixth Circuit's ruling in *Wilson* require dismissal of the claims pending against the Dayton City officials. Insofar as these cases have been cited herein for the proposition that "a § 1983 action will not lie against police supervisory officers for failure to prevent police misconduct, absent a showing of direct responsibility for the improper action," *Wilson*, 612 F.2d 275, 276 (6th Cir. 1980), citing *Rizzo*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), *Kostka v. Hogg*, 560 F.2d 37 (1st Cir. 1977), and *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), they are simply not pertinent, for the same reasons articulated previously with respect to the respondeat superior theory raised by the City of Dayton. If the present action rested merely upon the negligent acts of the Jail guards at the time of the fire, which are similar to the acts alleged in *Wilson*, 612 F.2d at 275, the Court would have little difficulty concluding that the claims against the supervisory officials should be dismissed. However, in addition to these claims, Plaintiffs have presented contentions involving conduct of the City officials themselves, who were charged under Ohio law and the ordinances of the City of Dayton, with responsibility for erecting, maintaining and staffing the Jail. If these duties were not performed or were performed in a manner which caused injury to others, it is difficult to conceive of persons other than the named Defendants who would be "directly responsible." Therefore, the Court concludes that, since the complaint alleges sufficient direct participation by the Defendant officials, their Motion to Dismiss must be overruled.

## V. CONCLUSION

Based on the foregoing analysis, which has indicated that, under allegations of the Complaint, taken as true, Plaintiffs have stated a cause of action under 42 U.S.C. § 1983, with respect to all Defendants herein, the Court concludes that:

1. The Motion to Dismiss filed by all Defendants is overruled;

2. Plaintiffs are granted fourteen days from receipt of this decision, to amend their Complaint in accordance with the comments contained in this Opinion.

Counsel listed below will take note that a conference call will be held with Court and counsel at 8:10 a. m. on Thursday, December 10, 1981, for the purposes of determining further procedures to be followed in this case, including, but not limited to the setting of an oral hearing on the Plaintiffs' Motion to Certify the Class, the setting of a trial date, discovery cut-off date, etc.